## SILAS F. MILLER *v.* JACOB W. FUNK.

**Appeal and Error—Final Orders—Judgment not Final.**

An order of the lower court, adjudging the dismissal of former suits null and void, and that the allegations of the petition for revivor were sufficient to give him jurisdiction, and retaining the cases for further preparation and trial on their merits, is not such a final order, from which an appeal will lie.

**Same—**

A judgment to be final, must not merely decide that one of the parties is entitled to relief of a final character, but must give that relief by its own force, or be enforceable for that purpose, without further action by the court, or by process for contempt.

**Same—**

Should the chancellor set aside orders dismissing the actions, and ordered the court in which they were pending to replace them on the docket of preparation and trial after the expiration of the term his power over them would have ceased, and an appeal therefrom would be allowed.

APPEAL FROM LOUISVILLE CHANCERY COURT.

June 1, 1870.

OPINION OF THE COURT BY JUDGE PETERS:

In March, 1864, S. S. Bush and H. C. Shevell, attorneys at law residing, and practicing their profession as partners in the City of Louisville, under an engagement with appellee for the purpose, brought two actions for him, and in his name, against Silas W. Miller, in the Jefferson Circuit Court. In the one case charging that Miller was indebted to him in the sum of $2971.50 for money laid out, and expended, and services performed for his benefit, and at his special instance and request, and prayed judgment for said sum. And in the other, that he was employed by Miller as his agent to purchase beef cattle for him in Kentucky and draw on him for the price of the cattle, which he might purchase from time to time, making the drafts therefor payable on sight— That having purchased cattle under his

employment aforesaid, and delivered them to Miller, to the
amount of $2850, he drew on him for said sum, making the
draft payable on sight at the Bank of Kentucky, and to pay
the persons from whom the cattle were purchased got the money
on said draft at the branch of said bank at Bowling Green, as
they lived near that place. That the holder of the draft sent it
to the place of payment, of all which Miller had notice, but
refused to accept or pay it, and after having the same protested,
the bank sued appellee, and caused him to be arrested, and held
to bail, and while in custody, he was compelled to raise the
money at great sacrifice, to pay the draft to procure his dis-
charge. And for the alleged wrongs, and the money advanced
he sought judgment against Miller for $5,000.

In the last named case Miller filed a demurrer on the 26th of
May, 1864, and on the same day filed an answer, counter-claim
and set-off; a reply was filed by appellee, traversing the material
allegations of the counter-claim, but the demurrer was not dis-
posed of.

In the other case appellant on the last named day filed a
demurrer to the petition, but filed no answer, and it does not
appear that the court ever disposed of the demurrer.

Appellee took the depositions of quite a number of witnesses,
conducing to sustain his claims, and whether or not the cases
were fully prepared for trial on the part of appellee on the
13th of May, 1867, to which term of the court, they had from
time to time been continued it is not necessary, nor proper
that this court should express any opinion; but on that day an
order to the following effect was made in each case.

On motion of plaintiff by attorney ordered that this case be,
and is hereby dismissed and settled.

Appellee resided in Missouri, and was not present when these
orders were made, and may not have even heard of them for a
year afterwards.

In June, 1868, he commenced proceedings by rules against
his said attorneys, to compel them to pay over to him one
thousand dollars which he charged they had received from Miller
for dismissing his suits against him, his efforts resulted in a
personal judgment against Shivell alone for $1,000, with interest
from the 1st of June, 1867, and costs, from which he realized
nothing on account of the insolvency, or non-residence of Shivell,

or both; as to Bush his rules were discharged. He then in January, 1869, instituted two suits in the Louisville Chancery Court against Miller, Bush and Shivell, in which after alleging the facts in relation to the institution of his two actions against Miller as herein stated, and making transcripts thereof parts of his petition, he alleges substantially in each, that he had by the evidence taken by way of deposition established his right to recover against the defendant in said actions, and if the same had been tried on the merits, he would have recovered the amount claimed by him in each, but that on the 23rd of May, 1867, by a fraudulent combination between the defendant in said actions, and his said attorneys, whom he had engaged to prosecute the same, the latter pretended to compromise his demands, against the former— That it does not appear in the orders for the dismissal of his actions which were made without his knowledge, and consent, and without authority that his attorneys received anything therefor; but that they received one thousand dollars from Miller as the consideration for surrendering his claims, and dismissing both of his cases against him, that said attorneys acted without authority from him, and that Miller knew they had no such authority, and that he has never approved or ratified said acts of his attorneys— That he had no information, and never heard that his suits were dismissed until May, 1868, that although his said attorneys knew he resided in Missouri, neither of them ever wrote to him, or informed him of what they had done, that Miller resided in Ohio in May, 1868, and continued to reside there until a few weeks before. he instituted these actions, and that when he made the arrangement with Bush and Shivell to pay them $1,000 to dismiss said actions against him, they were insolvent and he knew it— And concludes with a prayer that the orders dismissing his actions, and the judgments rendered against him for costs, be set aside, and that he be permitted to prosecute his said actions and for general relief.

After Miller's demurrers to the petitions were overruled, he filed answers, in which he denied that appellee had any causes of actions against him, or had made out the same by proof, but averred that he believed he would if the cases had been tried on their merits recovered judgment on his counter-claim, and that while the actions were pending appellee often applied to him in person to compromise them, which he declined, but that they

had been kept on the docket longer than he expected, that he had in the mean time removed to Cincinnati, and wishing to avoid further trouble, and to rid himself of law suits in Kentucky, he became willing to compromise, and accepted a proposition to pay one thousand dollars, and a portion of the costs to settle said suits, and paid the money to appellee's attorneys; but denies that it was effected by a fraudulent combination or arrangement with said attorneys, or that he thereby perpetuated any fraud on the rights of appellee. He avers that said attorneys had authority to make said compromise, and in an amended answer refers to, and makes a letter written by appellee to them a part thereof, by which he insists full authority is given them to compromise the suits. He denies having any knowledge, or information sufficient to form a belief of the insolvency of said attorneys.

Upon the evidence taken and the agreement of facts by the parties the cases were submitted—and the court below being of the opinion that appellee had not given his attorneys any authority to compromise his said actions, and that he had not ratified said compromise by any act, adjudged the orders dismissing them null and void, and further adjudged that the allegations of the petitions were sufficient to give the Louisville Chancery Court jurisdiction to hear and decide the cases, and therefore retained them for further preparation and trial on their merits—and from those orders, and judgments Miller has appealed.

The first question presnted for judicial determination is whether the judgment appealed from is final.

This court in the case of *Apperson v. Bondurant, 4 Met. 30,* after a review of the authorities on the question concluded that the following rule was deducible therefrom—"That a judgment to be final must not merely decide that one of the parties is entitled to relief of a final character, but must give that relief by its own force, or be enforceable for that purpose, without further action by the court, or by process for contempt."

In the case of *"The Maysville and Lexington Railroad v. Punnett, 15 B. M. 48.* It is said "that a final order either terminates the action itself, decides some matter litigated by the parties, or operates to divest some right in such a manner as to put it out of the power of the court making the order, after

the expiration of the term to place the parties in their original position."

Tested by these and other authorizes to the same effect— Can the orders under consideration be considered as final, and from which an appeal will lie to this court?

They certainly do not terminate the actions, for the court expressly retains them for further preparation, that they may be tried on their merits— Nor have they put it out of the power of the court to place the parties in their original position, although the term at which they were made has expired, for the court may at any subsequent term dismiss the suits, upon the ground that the attorneys had the authority to compromise the former actions, or on the merits, or any other grounds which might seem equitable, or proper.

If the chancellor had set aside the orders dismissing said actions, and ordered the court in whch they were pending to replace them on the docket for preparation and trial, (for which his jurisdiction can not be questioned), after the expiration of the term, his power over them would have ceased, and might have put an end to the suits in his court. But he did not make such orders, nor are those made enforceable without further action by the court.

We therefore, conclude that the orders appealed from are not such final orders, or judgments as confer jurisdiction on this court—and the appeals must therefore be dismissed.

*Thompson Booth & Kline, for appellant.*

*D. M. Rodman, J. B. Cochran, Brown & Murray, for appellees.*